**Phyllis J. SIVERTSEN, Appellant,**

v.

**The GUARDIAN LIFE INSURANCE COMPANY OF AMERICA,**
Appellee.

No. 13282.

United States Court of Appeals
Fourth Circuit.

Argued Dec. 3, 1969.

Decided Jan. 28, 1970.

Rehearing Denied March 23, 1970.

444

Joseph A. Gawrys, Norfolk, Va. (Van-Deventer, Black, Meredith & Martin, Norfolk, Va., on brief), for appellant.

William C. Worthington, Norfolk, Va. (Williams, Worrell, Kelly & Worthington, Norfolk, Va., on brief) for appellee.

Before WINTER and CRAVEN, Circuit Judges, and HARVEY, District Judge.

HARVEY, District Judge.

Suit on a life insurance policy issued by The Guardian Life Insurance Company of America (Guardian) was brought in the court below by the widow of the deceased insured. Following a three-day trial, the jury returned a verdict on January 10, 1968 in favor of the widow in the amount of $20,000. Motions for a directed verdict, for judgment n. o. v. and for a new trial made by Guardian before the entry of judgment were denied by the District Judge for reasons stated in a Memorandum filed February 1, 1968. Claiming that the insured made statements in the application for the insurance policy which were materially false, Guardian thereafter filed under Rule 50(b), F.R.Civ.P., another motion for a judgment n. o. v. The trial testimony was written up and reviewed by the District Judge who subsequently filed a Memorandum Order dated December 30, 1968 concluding that he had erred in his earlier ruling and granting the insurance company's motion.

From the setting aside of the jury verdict and the entry of judgment for Guardian, the widow now appeals. We affirm for the reason that the only reasonable conclusion that can be drawn from the evidence is that the insured made materially false statements concerning his health in filling out the application which resulted in the issuance of the policy in question.

Lt. Col. Warren S. Sivertsen, the insured, retired from the Marine Corps in 1962. In early 1965, he accepted a position with a new educational institu-

tion known as Virginia Wesleyan College. Through a friend who was an agent of Guardian, he arranged for a so-called "baby group" insurance plan for employees of the college. On August 10, 1965, Sivertsen himself filed a written application with Guardian for an individual policy of term life insurance to be issued under the plan. Included in the application were the following questions:

"B. * * *

"4. Have you consulted any physician or medical practitioner or been treated in any hospital, clinic, sanitarium or similar institution during the past five years? * * *

"C.1. Are you now ill?

"2. Have you ever had heart trouble, chest pain, high blood pressure or any other circulatory impairment, * * * or had any other * * * health impairment?"

The application further provided that if the answers to any of these questions would be "yes" then the applicant should give details "including the results of any routine physical examinations or periodic physical check-ups." Sivertsen answered "No" to questions C.1. and C.2. and "Yes" to question B.4. The only detail supplied was information that he had consulted Dr. A. White of Virginia Beach, Va., in April of 1965 for flu. Guardian communicated with Dr. White, who was Sivertsen's family physician, and finding no evidence of any significant health impairment or disease, issued the policy on September 15, 1965.

When the evidence as to Sivertsen's medical history for the five years immediately preceding the filing of the application is viewed in a light most favorable to the widow, the only conclusion that can be reached is that he falsely represented material facts in answering the questions set forth hereinabove. This particular insured was a well-educated man, 48 years of age and Vice President of a newly formed college at the time that he completed the application. He had previously had many years of administrative experience as a regular officer in the United States Marines, and he himself was instrumental in arranging for the purchase by the college of the plan of which his own policy was a part. On July 19, 1965, only three weeks before he filed the application, Sivertsen had been advised by the Physical Review Council of the Navy Department that he had been found unfit to perform the duties of his rank because of physical disability and was being retired permanently with a disability rating of 20%. Included among the medical findings were the following:

"Hernia, * * * Neuralgia, * * Arthritis due to direct trauma, * * Cicatrix, * * * Hypertensive cardiovascular disease, benign, labile, * * * Tinnitus, * * *."

Sivertsen died on June 26, 1966. In a rating decision, the Veterans Administration subsequently found that the primary causes of his death were leukemia and pneumonia and that a contributing cause of his death was hypertensive cardiovascular disease, a condition which arose during Sivertsen's period of military service.

The finding of permanent disability by the Navy Physical Review Council in 1965 was the culmination of some three years of medical examinations of Sivertsen and extensive administrative review of the degree of disability to which he was entitled on his retirement. In 1962, he was confined in a Naval Hospital for periods of 11 and 17 days respectively for pre-retirement physical examinations. An initial conclusion that he was physically fit for duty was appealed by Sivertsen to the Physical Evaluation Board of the Marine Corps which overruled the lower board and made an interim finding of a 30% disability. During the next three years, Sivertsen was examined further to determine whether his disability was temporary or permanent, including a final physical examination in May of 1965 at a Naval Hospital which led to the ultimate conclusion by the Physical Review Council that he should be permanently retired

with a disability rating of 20%. Three of the reports made by examining physicians during these years mentioned the presence of hypertensive cardiovascular disease.

In answering questions in the application relating to his health, no mention whatsoever was made by Sivertsen of this extensive medical record which had so recently led to the Navy's conclusion that he was entitled to a permanent disability rating. Sivertsen did no more than give Guardian the name of his family doctor who had treated him for flu in April of 1965 and who was not familiar with the Navy proceedings.

■ When questions B.4., C.1. and C.2. are considered in the light of the insured's medical history and his permanent disability rating from the Department of the Navy, the evidence is so overwhelmingly against the widow as to leave "no room to doubt what the fact is." Garrison v. United States, 62 F.2d 41, 42 (4th Cir. 1932); Richmond Television Corp. v. United States, 354 F.2d 410, 414 (4th Cir. 1965). Under Virginia law, which we must apply in this case, a false material representation voids an insurance policy. Hawkeye-Security Ins. Co. v. Government Emp. Ins. Co., 207 Va. 944, 154 S.E.2d 173 (1967); Chitwood v. Prudential Insurance Co. of America, 206 Va. 314, 143 S.E.2d 915 (1965). As the record permitted only one finding, we conclude that the District Court correctly set aside the jury verdict and granted Guardian's motion for judgment n. o. v.

■ The appellant has filed a motion under Appellate Rule 30(b) seeking to have imposed on Guardian a portion of the costs on appeal. Our review of the joint appendix leads us to conclude that Guardian has caused matters to be included in the joint appendix unnecessarily, and we therefore direct that $485.56 of the printing costs be paid by Guardian.

Affirmed.

CRAVEN, Circuit Judge (dissenting).

I dissent for the reasons stated by the district judge in his well-reasoned Memorandum of Decision [1] dated February 1, 1968. At that time—when the case was of fresh impression—the district judge denied the insurance company's alternative motions for judgment n. o. v. or for a new trial. It is too bad he had a second thought 11 months later. I think that he was right the first time, and that the questions presented were for the jury. Certainty in the adminis-

---

[1] That memorandum states, in pertinent part:

[T]he defendant urges that the answers by Colonel Sivertsen to questions 4(a), (b), (c) and (d) on the application for insurance were false in that they failed to disclose prior medical history and that it is the duty of the Court in such circumstances to rule that these misstatements were material and that the policy was therefore avoided on these grounds. In answer to interrogatories numbers 42, 43, 44, 45, 95, 96, and 97, The Guardian Life Insurance Company indicated that the only fact misrepresented, which they considered at all material to them was the matter of the hypertensive cardiovascular disease. The plaintiff counters this with competent medical testimony that a review of 25 years of physical examinations and medical records of the deceased did not disclose that Sivertsen ever had hypertensive cardiovascular disease and that he did not have it at the time the application was made. Further, says the plaintiff, this is borne out by the fact that the autopsy performed after Sivertsen's death in June, 1966 did not indicate any hypertrophy of the left ventrical or any other indication of hypertensive cardiovascular disease.

The Court is of the opinion that the conflicting medical testimony on the only fact considered material by the life insurance company (the presence of hypertensive cardiovascular disease) took the question beyond the province of the Court, which is the usual judge of materiality, and it was properly left to the jury, under the instructions specifically given on the point, to determine whether Sivertsen actually had hypertensive cardiovascular disease at all, or to such a degree as to be material.

tration of justice is not the valued goal it was once thought to be, for it is increasingy recognized that the search for certainty sometimes produces only certitude. I think the case could have been properly decided either way and should have been left to the jury.

## OPINION AND ORDER ON PETITION FOR REHEARING

### PER CURIAM.

In her petition for rehearing, the widow claims (1) that the insurance company here was not entitled under Virginia law to assert a defense of misrepresentation because the written application was not endorsed upon or attached to the insurance policy in question when issued; and (2) that since the pertinent medical evidence was conflicting, this issue was for the jury to resolve. We find no merit in these contentions and deny rehearing.

The Virginia statute relied upon, § 38.1–393, Code of Virginia of 1950, has no application here by virtue of § 38.1–405, which specifically exempts "policies issued or granted in exchange for lapsed or surrendered policies * * * ". By its terms, the original policy expired some six weeks after Sivertsen terminated his employment with Virginia Wesleyan College on December 31, 1965. On January 12, 1966, within permissible time limits, Sivertsen had formally applied for its conversion, and his wife had returned the original policy on January 25, 1966. The converted policy became effective automatically on February 16, 1966, which was 31 days after the last premium due date. The policy sued upon was therefore the converted policy which was not subject to the requirements of § 38.1–393 of the Virginia Code by virtue of § 38.1–405.

The widow's second point was adequately covered in the majority and dissenting opinions previously filed.

Despite the widow's suggestion for a rehearing in banc, no judge either a member of the Court or of the panel that rendered the decision has requested a vote on the suggestion. Rule 35, Fed.R. App.Pro.

Rehearing denied.

CRAVEN, Circuit Judge (dissenting).

I agree that the widow's contentions regarding the propriety of judgment n. o. v. were adequately covered in the opinions previously filed. However, I do not believe the questions raised by Mrs. Sivertsen as to the effect of § 38.1–393 and § 38.1–405, Code of Virginia (1950), should be disposed of without further argument. Section 38.1–405 does exempt "policies issued or granted in exchange for lapsed or surrendered policies" from the requirement of § 38.1–393 that the written application for insurance be attached to the policy when issued. Does this mean that conversion and reissuance of a policy is enough to cure the initial issuance of that policy without the attachment of the written application? I think not. The purpose of the attachment requirement is "that the insured shall have in his possession during his lifetime, and that the beneficiary shall have after the death of the insured, the entire evidence of the contract." Fisette v. Mutual Life Insurance Co., 162 La. 620, 110 So. 880, quoted with approval in Southland Life Insurance Co. v. Donati, 201 Va. 855, 114 S.E. 2d 595, 597 (1960). Interpreting § 38.1–393, the Virginia Supreme Court has said the legislature intended "to restrict the insurer in the use of statements made by the insured in defense of a claim under the policy unless they be incorporated into the contract in the mode prescribed." *Id.* at 596. Since the legislature has taken such pains to see that the insured and his beneficiary be given the "entire evidence of the contract," it would seem incongruous to hold that an insurer's failure to supply the entire contract could be remedied by the reissuance of an equally incomplete policy upon conversion. The legislature would seem to have contemplated that the § 38.1–405 exemption apply only to policies granted in exchange for lapsed or surrendered

policies that were in compliance with § 38.1–393.

Because the proper disposition of this question, and of others requiring interpretation of § 38.1–393, is unclear and has not been adequately considered by the court, I would grant the widow's petition for rehearing with reargument limited to the § 38.1–393 and § 38.1–405 aspects of the appeal.

I agree that these questions of state law do not justify rehearing en banc.