Glen DREWETT, Plaintiff-Appellant,

v.

AETNA CASUALTY & SURETY COM-
PANY and National Flood Insurers
Association, Defendants-Appellees.

No. 76–1372

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Sept. 27, 1976.

* Rule 18, 5 Cir., *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.,* 5
Cir., 1970, 431 F.2d 409, Part I.

Glenn T. Cambre, Speedy O. Long, Jena, La., for plaintiff-appellant.

P. A. Bienvenu, P. Albert Bienvenu, Jr., New Orleans, La., for defendants-appellees.

Before BROWN, Chief Judge, and GEWIN and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Plaintiff Glen Drewett sued defendant National Flood Insurers Association in federal district court to recover on a flood insurance policy issued under the provisions of the National Flood Insurance Act of 1968, as amended, codified at 42 U.S.C. § 4001 et seq. After a bench trial the district court denied recovery, and Drewett appeals. For the reasons stated herein, we affirm.

This court also must dispose of appellant Drewett's motion to tax to the appellee the cost of allegedly unnecessary portions of the appendix on appeal ordered by appellee. For the reasons stated herein, we grant this motion.

## I. MERITS

On May 2, 1973 Drewett applied for and was issued a flood insurance policy under the National Flood Insurance Program covering his "camp house" which rested on wooden "stilts" above the ground. On and before that date flood waters had already risen three to four feet up the stilts, although the waters had not yet reached the living quarters of the house itself. On May 5 the levee surrounding the house broke and the waters rose yet further, entering the living quarters of the house. The defendant Association denied Drewett's claim under his policy, and Drewett sued in federal district court under 42 U.S.C. § 4053.

The district court in a written opinion held for defendant on the ground that, under general principles of insurance law, where a loss already is in progress at the time a policy is issued, the contract of insurance does not take effect. The district court also ordered the Association to return to Drewett the premium he had paid.

Drewett appeals on the ground that the district court erred in applying the "loss-in-progress" principle to a policy issued under the provisions of the National Flood Insurance Program. He argues that, because the statute creating the Program anticipates that premiums may be charged that are lower than the actuarial cost of insuring property in flood-prone areas (the difference being subsidized by the federal government), see 42 U.S.C. §§ 4014 and 4015, it is inappropriate to apply insurance law principles developed originally to apply to profit-seeking insurers.[1] While conced-

1. Defendant asserts that Drewett did not raise this argument in the court below and hence should be deemed to have waived it. Brief for Appellee at 3–4. This contention is frivolous in view of the following arguments in the plaintiff's trial memorandum to the district court, reprinted at Appendix at 18–19:

Defendant argued on an earlier motion . . . that the National Flood Insurance Act creates a particular type of insurance applicable to a particular kind of loss which must be considered on its own merits and not in terms of Louisiana insurance law or other general principles of insurance law which are not applicable. Plaintiff shows that this is indeed the case in terms of applying the loss

in progress principle of insurance law to these particular facts and circumstances. There was no loss in progress clause in the policy of insurance involved herein. There was no loss in progress involved as it was common knowledge that there was water in that area when the policy was issued for the very reason that there must be a threat of a flood before National Flood Insurance will even be approved for an area and become available to the people who may be threatened by the flood.

In the defendant's trial memorandum, he refers to the fact that regular insurance companies would not issue a policy of insurance which goes against common sense and sound

ing that the Association is not liable for damage which the flood did to his house before the policy was issued, Drewett argues that he should recover for the additional damage done when the waters continued to rise after the policy was issued.

Drewett's contention is without merit. The Flood Insurance Program is administered with cooperation between the federal government and private insurance companies; the private companies carry some of the risk, although the federal government stands ready to reinsure and reimburse excessive losses. 42 U.S.C. §§ 4017, 4041–84. The Program also requires ongoing actuarial studies to help set the premiums to be charged, 42 U.S.C. § 4014. The eventual goal of the Program is to discourage building in flood-prone areas by raising, over time, the premiums actually charged to equal the actuarial cost of flood insurance. See U.S. Code Congressional and Administrative News (1968) at 2969, reprinting House Report No. 1585, 90th Cong., 2d Sess. (1968).

■ In short, although the Program offers subsidized flood insurance, it is designed to operate much like any private insurance company and eventually to eliminate the subsidy. Because the Program's exposure to claims and its premiums are required to be estimated in accordance with standard insurance practices, and because private insurers carry part of the risk, it is clear that Congress did not intend to abrogate standard insurance law principles which affect such estimates and risks. Nothing in the statute or regulations promulgated under it, see 24 C.F.R. Parts 1909–18, requires otherwise. Drewett cites no authority to suggest the contrary.

■ In a case very nearly identical to this one, *Presley v. National Flood Insurers*

*Association*, 399 F.Supp. 1242 (E.D.Mo. 1975), the district court held that the "loss-in-progress" principle applies to policies issued under the Program, rejecting the same arguments made by Drewett here. This plainly is the correct conclusion. We affirm.

## II. APPELLANT'S MOTION TO TAX COSTS OF SUPPLEMENTAL APPENDIX TO APPELLEE

Appellant filed a 31 page Appendix with his brief to this court, containing reproductions of the docket entries in the district court; his complaint and appellee's answer; appellee's motion for summary judgment, appellant's response in opposition, and the district court's partial grant of the motion; both parties' trial memoranda; the written opinion of the district court holding for appellee on the merits; the judgment; and the contract of insurance. The Appendix cost $76.30 to print.

Appellee designated, as additional portions of the record to be reproduced as a Supplemental Appendix, literally everything else in the record below. This Supplemental Appendix is 212 pages long. Among other things, it contains a reproduction of the entire trial transcript (Supp.App. at 82–187); a copy of the insurance contract, which was already reproduced in the original Appendix (compare Supp.App. at 190–94 with App. at 27–31); copies of 24 photographs of appellant's camp house (Supp.App. at 23, 32–33, 198–205, 209); two separate reproductions of the same diagram of the floor plan of the camp house (compare Supp.App. at 22 with id. at 208); two separate copies of the same statement of Glen Drewett dated August 8, 1973 (compare Supp.App. at 24 with id. at 211); copies of miscellaneous correspondence among the parties and the district court relating to

business practices. However, the National Flood Insurance Association is not set up to make a profit or to deal in sound business practices, but rather to provide relief to possible flood disaster victims, in order to remedy this national problem. It is plaintiff's contention that no clause with a loss in progress

provision was inserted in the policy in order to avoid the varied arguments that are now being made by the defendants in this case. The insurance is designed to cover a flood damage and is not readily available in the market place as other insurance is.

such matters as the filing of pleadings, bonds, interrogatories, and motions (Supp. App. at 8–10, 14–15, 26, 34, 38, 43, 50, 55, 58, 63, 70–76, 78, 81); copies of the parties' motions and memoranda of law to the trial court on a variety of issues at all stages of the proceedings (Supp.App. at 1–7, 16–17, 27–29, 39–42, 44–48, 51–54, 56–57, 64–69); copies of interrogatories, answers, and affidavits (Supp.App. at 11–12, 18–21, 30–31, 35); a copy of the pre-trial order (Supp. App. at 59–62); copies of the notice of appeal and receipt for appeal bond (Supp. App. at 77, 80); and more. This Supplemental Appendix cost $533.68 to print.

Appellant alleges that appellee's designation of the entire record for reproduction in the Supplemental Appendix was not necessary to enable us to decide the issue on appeal, and he moves that the cost of printing the Supplemental Appendix be charged to appellee. Fed.R.App.P. 30(a) and (b) describe the portions of the record [2] which are to be reproduced in the appendix and the methods by which the parties are to determine the contents of the appendix; and (b) authorizes the court of appeals to impose the cost of unnecessary portions of the appendix on the party designating them. These sections state (emphasis added):

(a) *Duty of Appellant to Prepare and File; Content of Appendix . . .* The appellant shall prepare and file an appendix to the briefs which shall contain: (1) the *relevant* docket entries in the proceeding below; (2) any *relevant* portions of the pleadings, charge, findings or opinion; (3) the judgment, order or decision in question; and (4) any other parts of the record *to which the parties wish to direct the particular attention of the court.* The fact that parts of the record are not included in the appendix shall not prevent the parties or the court from relying on such parts. . . .

(b) *Determination of Contents of Appendix; Cost of Producing.* The parties are encouraged to agree as to the contents of the appendix. In the absence of agreement, the appellant shall . . . serve on the appellee a designation of the parts of the record which he intends to include in the appendix and a statement of the issues which he intends to present for review. *If the appellee deems it necessary to direct the particular attention of the court to parts of the record not designated by the appellant,* he shall . . . serve upon the appellant a designation of those parts. The appellant shall include in the appendix the parts thus designated. *In designating parts of the record for inclusion in the appendix, the parties shall have regard for the fact that the entire record is always available to the court for reference and examination and shall not engage in unnecessary designation.*

Unless the parties otherwise agree, the cost of producing the appendix shall initially be paid by the appellant, but if the appellant considers that parts of the record designated by the appellee for inclusion are unnecessary for the determination of the issues presented he may so advise the appellee and the appellee shall advance the cost of including such parts. The cost of producing the appendix shall be taxed as costs in the case, but *if either party shall cause matters to be included in the appendix unnecessarily the court may impose the cost of producing such parts on the party.*[3]

See generally 9 Moore's Federal Practice ¶ 210.04.

---

**2.** The "record on appeal" is defined in Fed.R. App.P. 10(a):

The original papers and exhibits filed in the district court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the district court shall constitute the record on appeal in all cases.

**3.** For the "deferred appendix" method of designation, *see* Fed.R.App.P. 30(c); Fifth Circuit Local Rule 13(e).

This court, through adoption of Fifth Circuit Local Rule 13(b),[4] has emphasized its concern that the cost to the parties of appeals should not be inflated unnecessarily by careless practice in designating portions of the record to be reproduced in the appendix:[5]

> (b) *Contents of Appendix*: Counsel should bear in mind the Court's desire to minimize the cost of reproducing the appendix, consistent with the obligation and responsibility of the parties to reproduce therein those parts of the record which are essential to the Court's consideration and determination of the issues raised by the appeal. Any parts of the record which are inadvertently omitted from the reproduced appendix may be referred to by appropriate references to the original record. . . .

 We think that appellee here clearly has disregarded the dictates of Fed.R. App.P. 30 and Local Rule 13(b). For instance, because the issue on appeal is one of law and involves no dispute as to the salient facts,[6] it was wholly unnecessary to order reproduction of the entire trial transcript and all the exhibits in the Supplemental Appendix. *Oliver v. Michigan State Board of Education*, 519 F.2d 619, 621–24 (6th Cir. 1975); *Bernard v. Omaha Hotel, Inc.*, 482 F.2d 1222, 1225–26 (8th Cir. 1973). Similarly, reproduction in the Supplemental Appendix of all the memoranda of law submitted to the trial court by both parties on all issues—not one of which memoranda is referred to in appellee's brief—was unnecessary. *Aquascutum of London Inc. v. S. S. American Champion*, 426 F.2d 205, 213 n. 6 (2d Cir. 1970); *Volkswagenwerk Aktiengesellschaft v. Church*, 413 F.2d 1126, 1128 (9th Cir. 1969). The same is true of the correspondence among the parties and the district court, the interrogatories, answers, and affidavits, the pre-trial order, and the notice of appeal and receipt for appeal bond—none of which is cited in appellee's brief. There is, of course, no excuse for printing the same matter in the Supplemental Appendix twice or for duplicating in the Supplemental Appendix material already in the Appendix.

Appellee's "Opposition to Plaintiff-Appellant's Motion to have Appellee Pay Cost of

---

**4.** Promulgated under the authority of Fed.R. App.P. 47.

**5.** Care in designating portions of the record to be reproduced in the appendix is also an aid to this court. "[A] busy court is entitled to the help of the lawyers in winnowing out the parts of the record that are really essential for it to read; indeed, such an effort is likely to help the lawyers in their own presentation." Special Note by the Advisory Committee on Appellate Rules, Fed.R.App.P. 30 (Draft A, 1966), *reprinted at* 9 Moore's Federal Practice ¶ 100.01[2.6] at 20.

**6.** The issue on appeal is framed by appellant as follows:

> Did the Trial Court err in applying principles of Louisiana law and the general insurance law which regulate and apply to insurance companies who are in business with a profit motive to the flood insurance contract herein between plaintiff and defendant, NATIONAL FLOOD INSURERS ASSOCIATION, defeating the purposes and intentions of the National Flood Insurance Program, and depriving plaintiff of his legitimate claim for damages under said contract?

Brief for Appellant at iv.

> Appellee itself states:
>
> > Absolutely no argument has been made that the trial court's determination of the facts (that the plaintiff's camp sustained substantial damages as result of the presence of flood water around the foundations of the camp prior to the date he applied for the policy . . .) is unsupported by the facts or, for that matter, clearly erroneous. This has not been raised as an issue before this court.

Brief for Appellee at 4–5. We agree. The trial court found:

> [A] substantial element of the total loss claimed by plaintiff . . . is directly related to the presence of three to four feet of water around the foundations of the camp prior to May 2, 1973.

Opinion of District Court, *reprinted at* Appendix at 22, 23. Appellant concedes that "his camp had water under it at the time the policy was issued" and does not dispute that "there was some damage to the foundation because of the presence of the water at the time of the issuance of this policy." Brief for Appellant at 7.

Unnecessary Portion of Appendix Requested" states in conclusory fashion that inclusion of "all testimony, evidence and the entire record . . . is essential to the just disposition of this matter and reference thereto is made in the brief of defendant-appellee . . ." The fact of the matter, however, is that appellee's brief refers to only minute portions of the record that is reproduced in the Supplemental Appendix, and the portions therein referred to have no bearing on the issue of law on appeal. *Compare* Brief for Appellee at 5–8 *with* text and note at note 6 *supra.*

Although we have no desire or intent to discourage litigants from reproducing all the relevant portions of the record in their appendices to this court, we cannot condone the extravagance practiced by appellee here. Because of the evident carelessness and disregard for Fed.R.App.P. 30 and Local Rule 13(b) with which appellee's Supplemental Appendix was assembled, appellant's motion to tax the costs of the Supplemental Appendix against appellee is granted. *See* cases cited *supra; Sivertsen v. Guardian Life Insurance Company,* 423 F.2d 443, 446 (4th Cir. 1970); 9 Moore's Federal Practice ¶ 230.02[2]–[4]; *cf. Lester v. Aetna Casualty & Surety Company,* 240 F.2d 676, 677–78 (5th Cir.), *cert. denied,* 354 U.S. 923, 77 S.Ct. 1383, 1 L.Ed.2d 1437 (1957).

AFFIRMED.