Edwin S. LELAND, Plaintiff–Appellant,

v.

**FEDERAL INSURANCE ADMINISTRATOR, United Services Automobile Association, Defendants–Appellees.**

No. 90–3074.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 9, 1991.
Decided May 22, 1991.

Grover Gray Wilson, argued (Urs R. Gsteiger, on brief), Petree, Stockton & Robinson, Winston–Salem, N.C., for plaintiff-appellant.

Ellen Maren Neubauer, Fed. Emergency Management Agency, Washington, D.C., and Francis Boyd Prior, Crossley, McIntosh & Prior, Wilmington, N.C., argued (Sharon J. Stovall, Crossley, McIntosh & Prior, Wilmington, N.C., Margaret Person Currin, U.S. Atty., and Steven A. West, Asst. U.S. Atty., Raleigh, N.C., on brief), for defendants-appellees.

Before SPROUSE and WILKINSON, Circuit Judges, and COPENHAVER, District Judge for the Southern District of West Virginia, sitting by designation.

COPENHAVER, District Judge:

Edwin S. Leland ("Leland") appeals from the district court's grant of summary judgment in favor of the Federal Insurance Administrator ("FIA") and the United States Automobile Association ("USAA"), asserting that he is entitled to summary judgment on his claim for benefits under the 1988 Upton–Jones amendment to the National Flood Insurance Act, 42 U.S.C. § 4013(c) (the "amendment"). The district court denied summary judgment to Leland and granted summary judgment to the defendants, holding that Leland's losses occurred prior to the effective date of the Upton–Jones amendment and that the amendment did not apply retroactively to cover his losses. We agree and affirm the judgment of the district court.

I.

Appellant Leland is the owner of a beachfront residence at Topsail Beach, North Carolina. In March, 1985, defendant USAA issued to Leland a standard flood insurance policy ("SFIP") on his Topsail Beach property pursuant to the National Flood Insurance Program ("NFIP"). Defendant Federal Insurance Administrator ("FIA") is the official in the Federal Emergency Management Agency ("FEMA") who administers the NFIP.

The policy issued to Leland in 1985 was a single peril policy designed to protect homeowners living in coastal areas from certain enumerated losses due to flooding. The policy, as issued, provided coverage only for "direct physical loss by or from a flood." See 44 C.F.R. Part 61, App. A(1), Art. III.[1] There is no dispute between the parties to this action that the policy as issued in 1985 did not afford coverage, as sought by the plaintiff, for the physical relocation of an insured dwelling which had sustained structural damage due to flooding.

Severe winter storms battered coastal North Carolina, including the Topsail Beach area, in December, 1986, and in January and February, 1987. Leland contends that the high winds, waves and tides during those storms resulted in conditions of flooding as defined by the flood insurance policy issued to him.[2] He further contends

---

1. "Direct physical loss by or from a flood" is defined in the standard flood insurance policy as "any loss in the nature of actual loss of or physical damage evidenced by physical changes to the insured property (building or contents ...) which is directly and proximately caused by a 'flood'...." 24 C.F.R. Part 61, App. A(1), Art. II.

2. "Flood" is defined in the standard flood policy as follows:
   Wherever in this policy the term "flood" occurs, it shall be held to mean

that, as a result of each of the floods in December, 1986, and January and February, 1987, he sustained substantial damage to the heating, electrical and septic systems, and to the foundation, pilings and deck of his residence.

On or about March 17, 1987, Leland was advised in writing by Topsail Beach officials that, because of the damage to his residence from the severe winter storms and the underwashing and erosion of the land underlying the property, the residence was unfit for human habitation and, further, that condemnation proceedings were being initiated. Subsequently, in November, 1987, Leland was warned by city officials that the residence was in danger of imminent collapse.

In light of these warnings and fearful of imminent collapse, Leland relocated his residence to a lot which he owned across the street and which was further removed from the beachfront. The relocation commenced on November 16, 1987. Although physical movement of the dwelling was completed in November, 1987, the residence was not ready for occupancy until the septic tank was installed and approved on February 8, 1988.

After relocation of his residence, Leland submitted a claim for relocation costs of approximately $25,000 to FEMA. The claim was denied on the ground that relocation of the dwelling was not compensable under the standard flood insurance policy

held by Leland at the time of loss. Denial of the claim was also predicated upon FEMA's contention that the February 5, 1988, amendment to the SFIP which provides benefits for structural relocation of flood-damaged structures was not retroactive and would not afford coverage for relocations occurring prior to its enactment.[3]

After denial of his claim for relocation expenses, Leland filed this action against the Federal Insurance Administrator and, subsequently, against USAA.

## II.

Inasmuch as the flood insurance policy issued to Leland in 1985 and in effect at the time his residence was relocated in November, 1987, provided coverage only for "direct physical loss by or from a flood," both the insurance administrator at the claims level, and the district court in the proceedings below, determined that the relocation of Leland's residence was not a covered loss under the policy provisions in effect at the time of the relocation in November, 1987.[4] Leland does not contest the district court's ruling in this regard.

Leland asserts, however, that the Upton–Jones amendment to the National Flood Insurance Act, which was enacted and became effective on February 5, 1988, affords him coverage under the Act for expenses incident to the relocation of his residence.[5]

---

A. A general and temporary condition of partial or complete inundation of normally dry land areas from:
   1. The overflow of inland or tidal water.
   2. The unusual and rapid accumulation or runoff of surface waters from any source.
   3. Mudslides (i.e. mudflows) which are proximately caused by flooding as defined in paragraph A–2 of this article and are akin to a river of liquid and flowing mud on the surfaces of normally dry land areas, including your premises, as when earth is carried by a current of water and deposited along the path of the current.
B. The collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding the cyclical levels which result in flooding as defined in A–1 above.
44 C.F.R. Part 61, App. A(1), Art. II (1987).

3. The Administrator also determined that, even if the amendment were retroactive in operation, there would be no coverage for Leland's loss inasmuch as the property had not been condemned by the local land use authority. The administrator also noted that the residence had been voluntarily moved despite no state or local condemnation action having taken place. In view of the disposition of other issues on this appeal, it becomes unnecessary to address either of these contentions.

4. Whether coverage under the standard flood insurance policy for the structural damage done to Leland's residence would have existed but for the relocation is not before the court and we do not undertake to pass upon that issue here.

5. The amendment at issue derived from the Housing and Community Development Act of 1987, Pub.L. No. 100–242, § 544(b), 101 Stat.

He contends that the district court erred in its decision that the Upton–Jones amendment is not retroactive in application and in its determination that his loss occurred prior to the amendment's effective date of February 5, 1988.

### III.

The Upton–Jones amendment to the National Flood Insurance Act, 42 U.S.C. § 4013(c), was enacted in order to provide coverage under the National Flood Insurance Act for the relocation or demolition of flood-damaged structures determined to be subject to imminent collapse. The amendment states in pertinent part:

(1) If any structure covered by a contract for flood insurance under this subchapter and located on land that is along the shore of a lake or other body of water is certified by an appropriate State or local land use authority to be subject to imminent collapse or subsidence as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels, the Director shall (following final determination by the Director that the claim is in compliance with regulations developed pursuant to paragraph 6(A)) pay amounts un-

der such flood insurance contract for proper demolition or relocation.

42 U.S.C. § 4013(c)(1) (1988).[6]

■ No reported cases specifically address whether enactment of § 4013(c) should be given retroactive effect, nor does the amendment itself expressly provide for retroactive application. It is a fundamental and well established principle of law, however, that statutes are presumed to operate prospectively unless retroactive application appears from the plain language of the legislation. *See, e.g., Bowen v. Georgetown University Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988); *Bennett v. New Jersey,* 470 U.S. 632, 639, 105 S.Ct. 1555, 1559, 84 L.Ed.2d 572 (1985); *United States v. Magnolia Petroleum,* 276 U.S. 160, 162–63, 48 S.Ct. 236, 237, 72 L.Ed. 509 (1928).

In light of this well established principle of statutory construction, Leland argues that subparagraph (4)(A) of § 4013(c), which states that "[t]he provisions of this subsection shall apply to contracts for flood insurance under this title that are in effect on, or entered into after, February 5, 1988," warrants retroactive application of the amendment. The district court correctly noted, however, that subparagraph (4)(A) merely provides for application of the

1972 (Feb. 5, 1988). Section 544(b) provides that "[T]he amendment made by this section shall become effective on the date of enactment of this Act." *Id.*

**6.** The amendment further provides:

(2) If any structure subject to a final determination under paragraph (1) collapses or subsides before the owner demolishes or relocates the structure and the Director determines that the owner has failed to take reasonable and prudent action to demolish or relocate the structure, the Director shall not pay more than the amount provided [by the mathematical formula set forth] in subparagraph (A)(i) with respect to the structure.
. . . .
(4)(A) The provisions of this subsection shall apply to contracts for flood insurance under this title that are in effect on, or entered into after, February 5, 1988.
(B) The provisions of this subsection shall not apply to any structure not subject to a contract for flood insurance under this title on the date of a certification under paragraph (1).

(C) The provisions of this subsection shall not apply to any structure unless the structure is covered by a contract for flood insurance under this subchapter—
(i) on or before June 1, 1988;
(ii) for a period of two years prior to certification under paragraph (1); or
(iii) for the term of ownership if less than two years.
. . . .
(6)(A) The Director shall promulgate regulations and guidelines to implement the provisions of this subsection.
(B) Prior to the issuance of regulations regarding the State and local certifications pursuant to paragraph (1), all provisions of this subsection shall apply to any structure which is determined by the Director—
(i) to otherwise meet the requirements of this subsection; and
(ii) to have been condemned by a State or local authority and to be subject to imminent collapse or subsidence as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels.
42 U.S.C. § 4013(c) (1988).

amendment to those standard flood policies which were in effect on the date of the amendment's enactment on February 5, 1988, and to those issued thereafter, without the necessity of amending such policies to reflect the new statutory coverage. Absent such a provision, it would have been necessary for FEMA to attach riders or endorsements to policies issued prior to incorporation of the new amendment into the standard flood insurance policy in order for policy holders to benefit prospectively from the amendment.

Support for the district court's interpretation of subsection (4)(A) of § 4013(c) is found within the liberalization clause of the standard flood insurance policy which was issued to Leland and which was in effect at the time of the relocation of his residence. The liberalization clause provides:

> While this policy is in force, should we have adopted any forms, endorsements, rules or regulations by which this policy could be broadened or extended for your benefit by endorsement or substitution of policy form, then, such matters shall be considered to be incorporated in this policy without additional premium charge and shall inure to your benefit as though such endorsement or substitution has been made.

44 C.F.R. Part 61, App. (A)(1), Art. IX (1988).

Other courts which have considered the effect of the liberalization clause in standard flood insurance policies have held that, rather than providing for retroactive application of amendments to FEMA, the clause is designed to foster administrative convenience and efficiency. As the Eighth Circuit recently held in *Criger v. Becton:*

We are convinced the SFIP liberalization clause was intended merely to give the insured the benefit of favorable changes made by FEMA during the policy term. The clause fosters administrative efficiency by allowing FEMA to give an insured the benefit of an amendment without requiring each SFIP to be rewritten or endorsed every time FEMA makes a change. The liberalization provision does not give retroactive effect to new SFIP terms; rather, it serves as a device for automatically reading into existing policies beneficial changes as soon as FEMA makes them and declares them to be in force.

902 F.2d 1348, 1352 (8th Cir.1990).

In *Bowen v. Georgetown University Hospital,* the Supreme Court recently reaffirmed the longstanding principles relative to the retroactive application of statutory enactments and administrative rulemaking and held that, even where some substantial justification for retroactivity is presented, courts should be reluctant to find such authority absent an express statutory grant. 488 U.S. 204, 208–09, 109 S.Ct. 468, 471–72, 102 L.Ed.2d 493 (1988).[7] The *Bowen* Court held: "[r]etroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.* at 208, 109 S.Ct. at 471, citing *Greene v. United States,* 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964); *Claridge Apartments Co. v. Comm'r,* 323 U.S. 141, 164, 65 S.Ct. 172, 185, 89 L.Ed. 139 (1944); *Miller v. United States,* 294 U.S. 435, 439, 55 S.Ct. 440, 441, 79 L.Ed. 977 (1935); *United States v. Magnolia Petroleum Co.,*

---

**7.** Although Leland has not so argued, some litigants seeking retroactive application of other amendments to FEMA have asserted, unsuccessfully, that retroactivity is warranted under the principles set forth in the earlier Supreme Court decision of *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). *See, e.g., Wright v. Director, Federal Emergency Management Agency,* 913 F.2d 1566, 1572–74.

In *Bradley,* the Court held that a statutory provision for attorneys' fees should be retroactively applied to a fee request pending when the statute was enacted. *Bradley* premised its holding upon the principle that a court must apply the law in effect at the time it renders its decision, absent manifest injustice, statutory direction or legislative history to the contrary. 416 U.S. at 715, 94 S.Ct. at 2018.

Even under the *Bradley* approach, however, retroactivity is not warranted in the present case inasmuch as application of the amendment would result in manifest injustice by distorting the rights of the respective parties already fixed by the policy provisions in effect prior to February 5, 1988.

276 U.S. 160, 162–63, 48 S.Ct. 236, 237, 72 L.Ed. 509 (1928).

The *Bowen* decision and the principles articulated there have been cited and relied upon recently by other circuits in cases arising under the National Flood Insurance Act. *See Criger v. Becton*, 902 F.2d 1348 (8th Cir.1990); *Wright v. Director, Federal Emergency Management Agency*, 913 F.2d 1566 (11th Cir.1990). These cases have consistently recognized that, in accordance with Supreme Court precedent, statutory enactments or amendments "are not to be given retroactive effect or construed to change the status of claims fixed in accordance with earlier provisions unless the legislative purpose so to do plainly appears." *Criger*, 902 F.2d at 1354; *Wright*, 913 F.2d at 1574, citing *United States v. Magnolia Petroleum*, 276 U.S. at 162–63, 48 S.Ct. at 237.

As in both the *Criger* and *Wright* cases which determined that other recent amendments to the National Flood Insurance Act should not be applied retroactively, the status of Leland's claim in the present case was "fixed" at the time he chose to relocate his home by policy provisions then in effect.[8] Moreover, like the amendments at issue in *Criger* and *Wright*, an intent for retroactive application of the amendment at issue is discernable from neither the language of the amendment itself nor from any other indication of congressional intent.

**8.** In *Wright,* the Eleventh Circuit noted:

> Wright entered into a *contractual* relationship with FEMA when he signed consecutive insurance policies under the Program. The policies were for fixed terms, and Wright was obligated to pay a yearly premium. Each party was bound to comply with the explicit terms of the policies. Based on the terms of the policy, the federal government established premium rates, estimated the cost of the program, and determined its contours of liability. It acted, like a private insurance company, according to the terms of the contracts entered into in 1985 and 1986.... [S]uch a relationship created unconditional and matured rights upon which the parties relied. Retroactive application of the October Amendment would deny both the federal agency and Program participants "fixed, pre-

For these reasons, the district court properly ruled that the Upton–Jones amendment to the National Flood Insurance Act, 42 U.S.C. § 4013(c), did not apply retroactively to cover the costs incurred by Leland in the relocation of his residence.

IV.

■ Leland also asserts that, even if the amendment does not apply retroactively, the amendment nonetheless affords coverage for his claim for relocation expenses. He contends that his "loss," assertedly the relocation of his residence, was not complete until February 8, 1988, three days after the effective date of the amendment, when the septic tank at the relocated residence was completed and the dwelling approved for occupancy. Arguing that the amendment does not specify what event triggers coverage and that his "loss" did not occur until after February 5, 1988, Leland asserts that he should be given the benefit of coverage under the amendment by virtue of "general principles of federal law." [9]

■ Federal common law controls the interpretation of insurance policies issued pursuant to the National Flood Insurance Program. (NFIP). *See, e.g., Sodowski v. National Flood Ins. Program*, 834 F.2d 653, 655 (7th Cir.1987). In considering coverage questions arising under the NFIP, federal courts have recognized that, because potential exposure to claims and premium rates are estimated by FEMA in

> dictable standards for determining if expenditures are proper." Further ... there are comparable "practical considerations related to the administration of" an insurance program ... which necessitate obligations being generally determined by the policy terms in effect at the time Wright was actively insured under a SFIP.

913 F.2d at 1574 (emphasis in original) (citations and footnotes omitted).

**9.** Consistent with general principles of insurance law, federal courts have recognized that, if the language of an insurance policy is reasonably open to alternative constructions, the one more favorable to the insured should be adopted. *See, e.g., Aschenbrenner v. United States Fidelity & Guaranty Co.*, 292 U.S. 80, 84–85, 54 S.Ct. 590, 592–593, 78 L.Ed. 1137 (1934).

accordance with standard insurance practices, "Congress did not intend to abrogate standard insurance law principles which affect such estimates and risks." *Drewett v. Aetna Cas. & Sur. Co.*, 539 F.2d 496, 498 (5th Cir.1976); *Sodowski*, 834 F.2d at 655.

The standard flood insurance policy at issue in this case contains an exclusionary clause commonly referred to in the insurance industry as a "loss-in-progress" provision. That clause expressly states:

> We only provide coverage for direct physical loss by or from flood which means we do not cover:
>
> B. Losses of the following nature:
>
> 1. A loss which is already in progress as of 12:01 A.M. of the first day of the policy term, or as to any increase in the limits of coverage which is requested by you, a loss which is already in progress when you request the additional coverage.

44 C.F.R., Pt. 61, Art. III (1987).

It is thus seen from the provisions of Leland's own policy that prospective changes in policy coverage are not intended to encompass losses already in progress at the time such changes in coverage are implemented. Such a result is consistent with the decisions of federal courts which have uniformly held that the "loss-in-progress" principle of standard insurance law applies to policies issued pursuant to the Act, and thus have denied coverage for flooding commencing prior to the effective date of a policy but not resulting in loss until after the effective date. *See, e.g., Presley v. National Flood Insurers Assoc.*, 399 F.Supp. 1242, 1245 (E.D.Mo.1975); *Mason Drug Co. v. Harris*, 597 F.2d 886, 887–88 (5th Cir.1979); *Summers v. Harris*, 573 F.2d 869 (5th Cir.1978); *Drewett*, 539 F.2d at 498. Even in the absence of a "loss-in-progress" policy exclusion, federal courts have denied coverage for losses due to flooding which occurred prior to the effective date of a policy issued pursuant to the National Flood Insurance Program. *See, e.g., Drewett*, 539 F.2d 496; *Summers*, 573 F.2d 869.

In *Drewett v. Aetna Cas. & Sur.*, an insured applied for and was issued a flood policy pursuant to the National Flood Insurance Program to cover his "camp house." Prior to and on the date the policy was issued, flood waters had risen three to four feet up the stilts which supported the structure. 539 F.2d at 497. Three days after issuance of the policy, a levee which surrounded the property broke, allowing flood waters to enter the living quarters of the structure. Coverage was denied for the flood damage done to the residence on the basis of the "loss-in-progress" principle, with the Fifth Circuit noting:

> [A]lthough the [Flood Insurance] Program offers subsidized flood insurance, it is designed to operate much like any private insurance company.... Because the Program's exposure to claims and its premiums are required to be estimated in accordance with standard insurance practices, and because private insurers carry part of the risk, it is clear that Congress did not intend to abrogate standard insurance law principles which affect such estimates and risks. Nothing in the statute or regulations promulgated under it requires otherwise....
>
> [T]he district court held that the "loss-in-progress" principle applies to policies issued under the Program, rejecting the same arguments made by Drewett here. This plainly is the correct conclusion. We affirm.

539 F.2d at 497–98 (citations omitted). *See generally*, Annotation, *National Flood Insurance Risks and Coverage*, 81 A.L.R. Fed. 416, 421, 434–35 (1987).

Although the "loss-in-progress" principle has been applied in cases such as *Drewett, Presley, Summers* and *Mason* to flood insurance coverage disputes which arose after the issuance of new policies of flood insurance rather than after the expansion of benefits pursuant to a statutory amendment, the rationale underlying the rule, namely, prevention of unfair allocation of loss to the insurer whether through fraud or innocent mistake, logically applies in the statutory amendment context as well.[10] To

---

**10.** In *Presley*, the court noted that the "loss-in-

progress" principle has developed as a matter of

hold otherwise, and to adopt Leland's position that coverage exists merely because incidental repairs were made after the amendment's effective date, would allow an insured to defer making such repairs to a flood-damaged structure in a purposeful effort to delay his "loss" until after enactment of future beneficial amendatory changes.

Application of the loss-in-progress principle to the facts of this case renders it apparent that there can be no coverage for Leland's claim on the theory that his loss did not occur until February 8, 1988, when the septic system at the relocated residence was installed and approved. Indeed, there is no dispute that the storms which damaged the Leland residence and which necessitated relocation of the structure and the consequent replacement of the septic system, occurred in December, 1986, and in January and February, 1987. By November, 1987, nearly three months prior to the amendment's effective date, a new site had been prepared and physical relocation of the structure to its new location had been completed.

Although installation and approval of the septic system was surely a necessary incident to the physical relocation and reinhabitation of Leland's residence, it cannot be viewed in isolation from the other chain of events, particularly the flooding allegedly producing the damage in question, which occurred well prior to the amendment's effective date of February 5, 1988. To the extent that installation of the septic system is a compensable loss under the amendment at issue, which we need not decide here, such loss was already in progress on the amendment's effective date and does not furnish a basis for coverage of Leland's claim.

## V.

Accordingly, we agree with the decision of the district court granting summary judgment to the defendants and its judgment is hereby affirmed.

AFFIRMED.

public policy and has, as a fundamental purpose, prevention of the perpetration of fraud in the acquisition of insurance contracts. 399 F.Supp. at 1244–45.