Marsha McCORMICK, Plaintiff,

v.

CONSOLIDATION COAL COMPANY,
Defendant.

Diana MILETO, Plaintiff,

v.

CONSOLIDATION COAL COMPANY,
Defendant.

Civ. A. Nos. 89–52–C and 89–53–C.

United States District Court,
N.D. West Virginia.

March 20, 1992.

Sharon A. Hayes, Morgantown, W.Va., for plaintiffs.

Robert M. Steptoe, Jr., Clarksburg, W.Va., Daniel L. Fassio, Pittsburgh, Pa., for defendant.

**MEMORANDUM OPINION**

MAXWELL, Chief Judge.

Plaintiffs Mileto and McCormick were hired as general inside laborers at the Defendant's Pursglove # 15 Mine in February 1981. Their employment was governed by the National Bituminous Coal Wage Agreements between the UMWA and the Defendant.

In December 1985, Plaintiffs filed separate complaints with the EEOC, alleging that they had been subjected to continuous forms of sexual harassment and that they had received different treatment and pay based upon gender. On January 23, 1986, the EEOC notified the WV Human Rights Commission, pursuant to its work-sharing agreement, that the EEOC would process the charges.

On September 14, 1988, the EEOC issued its "Determination," finding that a violation of Title VII had occurred as a result of incidents of sexual harassment and the assignments of jobs based upon gender. The EEOC dismissed several of the charges as untimely, one "buttocks slapping" incident, in particular, was found to have occurred in 1983 rather than in 1985.

Following unsuccessful conciliation efforts, the EEOC issued a "notice of right to sue" to both women on February 23, 1989.[1] Plaintiffs commenced these separate actions on May 23, 1989. The complaints are nearly identical. In each case, Count I alleges a violation of Title VII of the Civil Rights Act of 1964. Count II alleges that the same actions also violated the WV Human Rights Act. In Count III, a pendent state tort claim for intentional infliction of emotional distress is raised, and in Count IV, it is charged that said acts constituted outrageous misconduct entitling the women to punitive damages. Count V charges breach of contract.

1. During the pendency of the EEOC charge, several factors occurred which somewhat complicate the issues to be addressed. In March 1986, both women were laid off, along with 26 others. They were not called back to work until late March 1987. McCormick returned to work from March 23, 1987 until January 12, 1988, when she was injured on the job and began receiving Worker's Comp benefits. Mileto worked from March 23, 1987, until May 13, 1987, when she was injured on the job and began receiving Worker's Comp. Both women were laid off on March 7, 1988, and the mine was permanently closed on April 1, 1989.

Pending before the Court in each of the above-styled civil actions is the Defendant's Motion for Partial Summary Judgment, filed June 18, 1991, and the Plaintiffs' Motion to Amend, filed January 31, 1992.

Subsequent to the enactment of the Civil Rights Act of 1991, which took effect November 21, 1991, the parties submitted supplemental briefs, addressing the split of authority which is developing on the applicability of the Act to pending cases, and the Court heard oral argument of counsel via telephone conference call.

In its motion for partial summary judgment, the Defendant's challenge which is under immediate consideration is the Plaintiffs' request in the Title VII claim for emotional distress damages.

In Count I, Plaintiffs seek compensation for a violation of Title VII, including damages for "severe mental and emotional distress." Contrary to Plaintiffs' initial argument, compensatory and punitive damages were not available under Title VII, prior to the enactment of the 1991 Civil Rights Act, inasmuch as § 706(g) of Title VII, 42 U.S.C. § 2000e–5(g), authorized the award only of equitable relief, in the form of back pay, front pay, remedial seniority, injunctions, and declaratory relief.

Thus, if it is determined that the Civil Rights Act of 1991 is not applicable to cases pending at the time of its enactment, summary judgment as to compensatory and punitive damages in Count I is appropriate. This would not eliminate Count I, as the Plaintiffs are entitled to a trial to the Court to pursue an award of equitable relief.

The Court must, therefore, consider the applicability of the Civil Rights Act of 1991 to the present case. The Act makes several significant changes to Title VII legislation. In addition to the traditional equitable remedies, it now provides for compensatory and punitive damages in cases of intentional employment discrimination, 42 U.S.C. § 1981a(b)(1), and it also provides for trial by jury when damages are sought. 42 U.S.C. § 1981a(c)(1).

Contrary to the Defendant's argument that the legislative history supports the view that the Act was intended to be prospectively applied, it is apparent that the drafters of the Act, and ultimately Congress, were unable to agree on the applicability of the Act to pending legislation. Sen. Danforth, the bill's Republican sponsor, stated that the Act did not apply to pre-Act conduct. However, Sen. Kennedy, the Democratic sponsor, took the position that the Act did apply to pending cases.

The dilemma facing this Court, as well as all courts around the nation, is that two Supreme Court cases, seemingly in contradiction with each other, support the position upon which each senator relied. In *Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court held that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary.

Without addressing *Bradley*, the Supreme Court in *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988), determined that congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.

Despite the apparent contradiction, the Supreme Court did not resolve the issue in *Kaiser Aluminum and Chemical Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990). In that case, the majority opinion recognized an "apparent tension" between *Bradley* and *Bowen* but found that the act in question expressed clear congressional intent that it be applied prospectively under either case. In a concurring opinion, Justice Scalia noted that the two cases were irreconcilable and that the court should have taken the opportunity to find that the rule expressed in *Bradley* was wrong.

In looking at the growing number of cases from the district courts around the country which have addressed this issue, it would appear that each district court has looked to the law which it believes would

be applied in its respective circuit. *See, e.g., King v. Shelby Medical Center,* 779 F.Supp. 157 (N.D.Ala.1991); *Van Meter v. Barr,* 778 F.Supp. 83 (D.D.C.1991); *Hansel v. Public Service Company of Colorado,* 778 F.Supp. 1126, 1136–37 (D.Colo.1991); *Mojica v. Gannett Co.,* 779 F.Supp. 94 (N.D.Ill.1991).

The Fourth Circuit relied upon *Bradley* in *Fox v. Parker,* 626 F.2d 351 (4th Cir. 1980), to uphold the retroactive application of the Civil Rights Attorney's Fees Awards Act of 1976 in a § 1983 excessive force case.[2] However, in the very recent case of *Leland v. Federal Ins. Adm'r,* 934 F.2d 524 (4th Cir.1991), the Fourth Circuit relied upon *Bowen* to find that an amendment to the National Flood Insurance Act providing for relocation expenses could not be given retroactive effect. It is important to note, however, that the Fourth Circuit expressly noted the plaintiff's failure to seek retroactive application under *Bradley,* but further observed that, even under the *Bradley* approach, retroactivity was not warranted because application of the amendment would result in manifest injustice by distorting the rights of the respective parties. *Leland,* 934 F.2d at 528, n. 7.

Given the footnote in *Leland,* the state of the law is still very much undecided in the Fourth Circuit. It would seem that the circumstances in the *Fox* case are much more akin to those in the instant case than are the facts in *Leland.*

Although not controlling in this District, a very recent opinion refusing to apply the Act retroactively, *Khandelwal v. Compuadd Corporation,* 780 F.Supp. 1077 (E.D.Va.1992), appears to be the only case decided to date in the Fourth Circuit of which the Court is aware. The Court recognizes that *Khandelwal* represents an exhaustive and well-reasoned examination of the issue.

Believing *Bowen* is the most current statement of the applicable law, the Civil Rights Act of 1991 should not be construed to have retroactive effect, absent clear language in the Act or clear congressional intent that the Act is to be applied retroac-

tively. Having now thoroughly examined the language of the Act and its legislative history, the Court is unable to find any clear expressions which instruct that the Act must be applied retroactively.

Accordingly, an Order expressing in detail the conclusions of this memorandum opinion, as well as other related matters of interest, will be entered whereby the Plaintiffs' Motion to Amend will be denied and the Defendant's Motion for Summary Judgment as to compensatory and punitive damages in Count I will be granted.

**2.** *Bradley* was also relied upon in *U.S. v. Mon-* *santo,* 858 F.2d 160, 175 (4th Cir.1988).