Allan J. SMIETANKA and Virginia
Smietanka, Plaintiffs,

v.

DIRECTOR, FEDERAL EMERGENCY
MANAGEMENT AGENCY,
Defendant.

No. 1:92–cv–719.

United States District Court,
W.D. Michigan, S.D.

Aug. 31, 1993.

Robert U. McDowell, St. Joseph, MI, for
plaintiffs.

Daniel R. Hurley, Asst. U.S. Atty., Detroit,
MI, Mary Ellen O'Neill, Office of Gen. Counsel, Federal Emergency Management Agency, Washington, DC, for defendant.

## OPINION AND ORDER

MILES, Senior District Judge.

This case is a breach of contract case arising out of a flood insurance policy between Allan J. Smietanka and Virginia Smietanka ("the Smietankas") and the Federal Emergency Management Agency ("FEMA"). The case is now before the court on FEMA's Motion for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, FEMA's Motion for Summary Judgment is GRANTED.

### FACTS

In 1968, Congress enacted the National Flood Insurance Program. 42 U.S.C. § 4001. Congress created the program because "many factors have made it uneconomical for the private insurance industry alone to make flood insurance available to those in need of such protection on reasonable terms and conditions." 42 U.S.C. § 4001(b).

In 1988, Congress passed the Upton–Jones Amendment to the Act. 42 U.S.C. § 4013(c). This amendment extended the coverage of a Standard Flood Insurance Policy issued under the National Flood Insurance Program to include the cost of relocating or demolishing homes "subject to imminent collapse or subsidence as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels. . . ." 42 U.S.C. § 4013(c).

About October 29, 1988, the Smietankas began insuring their property located at 5180 Notre Dame Road, Berrien County, Stevensville, Michigan, under a flood insurance policy purchased through the National Flood Insurance Program.

In August 1990, the Michigan land use authority certified the Smietankas home to be in a zone subject to imminent collapse. Shortly thereafter, the Smietankas made a claim though their agent to FEMA for the loss of the home and property.

In September 1990, a FEMA adjuster appeared at the Smietankas' home to assess the claim. The adjuster was provided with copies of the property survey, deed, and

three estimates of the cost of demolition. FEMA's first estimate of the loss was $31,000. This estimate was later reduced to $28,918.

In autumn 1990 and winter 1991, raccoons and other rodents allegedly entered the home and damaged the walls, ceilings, and furnishings in the home.

In April 1991, FEMA sent a second adjuster to the home. The second adjuster noted the damage allegedly caused by the animals and issued a new appraisal of $11,500.

"On September 5, 1991 the defendant rendered a final determination of $12,150.00 based upon the value of the structure being $11,500.00." Complaint at ¶ 13. The Smietankas objected to the final determination. Yet, in October 1991, FEMA informed the Smietankas that the final determination was being affirmed.

On October 13, 1992, the Smietankas filed a Complaint with this court alleging that FEMA breached the flood insurance contract by not adjusting the loss at $31,000. Further, the Smietankas claim that the breach was negligent because FEMA delayed an unreasonably long time before reaching a final determination.

On June 18, 1993, FEMA filed a Motion of Summary Judgment claiming that as a matter of law it properly adjusted the loss at $12,150.00. The Smietankas did not file a response to the Motion for Summary Judgment.

## DISCUSSION

Summary judgment is proper where "the pleadings, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Canderm Pharmacal Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir.1988). In evaluating a motion for summary judgment, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d

202 (1986). While inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, "[w]hen the moving party has carried its burden under Rule 56(c), its opponents must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Only factual disputes which may have an effect on the outcome of a lawsuit under the applicable substantive law are "material." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

The issue presented in this case is whether the amount of loss incurred by demolishing or relocating a home is calculated based upon the condition of the structure when the claim is filed or may be determined at some date after the claim is filed, thus not compensating for losses which occur after the claim is filed but before a final valuation.

The Upton–Jones Amendment is silent as to the date on which the house should be valued. The Upton–Jones Amendment states:

(3) For purposes of paying flood insurance pursuant to this subsection, the value of a structure shall be whichever of the following is lowest:

(A) The fair market value of a comparable structure that is not subject to imminent collapse or subsidence.

(B) The price paid for the structure and any improvement to the structure, as adjusted for inflation in accordance with an index determined by the Director to be appropriate.

(C) The value of the structure under the flood insurance contract issued pursuant to this title.

42 U.S.C. § 4013(c)(3).

However, the regulations promulgated under the National Flood Insurance Program make clear that the program was designed to compensate policyholders only for damage which is directly attributed to flood. The regulations state:

Insurance under the Program is available only for loss due to flood, as defined in § 59.1 of this subchapter. The policy cov-

ers damage from a general condition of flooding in the area which results from other than natural causes, such as the break of a dam, but does not cover damage which results from causes on the insured's own property or within his control or from any condition which causes damage, which condition is substantially confined to the insured's premises or properties immediately adjacent thereto.

61 C.F.R. § 61.4(b). A flood is defined to include:

The collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels....

61 C.F.R. § 59.1(b). The program was not intended to compensate for loss not attributed to flood.

Recently, another district court decided that the Upton–Jones Amendment entitled policyholders to the structure's fair market value at the time the final determination was rendered; and therefore, it did not compensate the policyholder for the loss in value of the home which resulted from vandalism occurring after the claim was filed but before the final determination. *Nida v. Federal Emergency Management Agency,* 817 F.Supp. 597 (E.D.N.C.1992). In *Nida,* the plaintiff filed a claim under the Upton–Jones Amendment following a flood which left the house uninhabitable. The house was originally valued at $79,023. However, before rendering its final determination as to the value of the house, FEMA learned that the house had been vandalized. Therefore, the house was reappraised at $42,023 to reflect the loss due to the vandalism. *Id.* at 599.

The *Nida* court acknowledged that the Upton–Jones Amendment is silent as to the timing of valuation. However, the court noted that payment under the program is not made until a "final determination by the Director that the claim is in compliance with regulations developed pursuant to paragraph (6)(A)" (the enabling clause for federal regulations). *Id.* at 600 (citing 42 U.S.C. § 4013(c)(1)). Therefore, the court concluded that there was a "strong inference against

immediate valuation of damaged properties...." *Id.* at 600.

The *Nida* court rejected the plaintiff contention that the reduction in vandalism had no practical effect because the loss would have occurred during demolition. *Id.* The court noted that the statute makes no difference between valuations done for demolition and those done for relocation. Therefore, valuating the home without excluding the loss due to vandalism could allow the plaintiff to realize a windfall for a loss not attributed to the potential of imminent collapse. *Id.*

In the instant case, FEMA correctly valued the Smietanka's home at $12,150 and, therefore, did not breach its flood insurance contract with the Smietankas. This valuation accurately reflects the loss which would be incurred by the Smietankas if their home situated on a property subject to imminent collapse was destroyed. The damage done by the animals would more accurately be described as "damage which results from causes on the insured's own property or within his control or from any condition which causes damage, which condition is substantially confined to the insured's premises or properties immediately adjacent thereto." 44 C.F.R. § 61.4(b). Such damage is not covered by the flood insurance.

This court agrees with the *Nida* court in holding that FEMA is not required to make a valuation of the property as of the date the claim is filed. Such a requirement would make the flood insurance program insure all possible loss which occur after the claim is filed, in essence turning the flood insurance program into a general insurance program. Yet, the losses due to the animals in the instant case or vandalism in the *Nida* case are not losses that would result during a subsequent flood. In the ideal world, the valuation would be made, not as of the date that the claim is filed as the Smietankas suggest, but as of the date of demolition or relocation so as to accurately value the loss which would be attributed to a subsequent flood.

However, such valuation would be virtually impossible. Therefore, the statute anticipates that as claims are filed FEMA will investigate the claims and determine the val-

ue of the home which would be lost due to a flood. The valuation is not complete until FEMA issues a final determination.

The Smietankas complaint acknowledges that the final determination occurred on September 5, 1991. That valuation was $12,150.

Finding that FEMA did not breach its contract with the Smietankas, this court also concludes that FEMA did not negligently breach its contract.

## CONCLUSION

For the reasons stated above, FEMA's Motion for Summary Judgment is GRANTED. IT IS SO ORDERED.