399 F.Supp. 1242 (1975)
Richard R. PRESLEY and Peggy Presley, his wife, Plaintiffs,
v.
NATIONAL FLOOD INSURERS ASSOCIATION, Defendant.
No. 74-479C (A).
United States District Court, E. D. Missouri, E. D.
April 18, 1975.
James B. Herd, St. Louis, Mo., for plaintiffs.
William B. England, St. Louis, Mo., for defendant.

MEMORANDUM OPINION
HARPER, District Judge.
This is an action to recover property damages under a policy of flood insurance issued to plaintiffs by the defendant. This Court has jurisdiction by reason of diversity of citizenship, the amount in controversy being in excess of $10,000.00.
Plaintiffs at all times relevant to this lawsuit were the owners of a split-level brick residence in West Alton, Missouri, *1243 located near the confluence of the Mississippi and Missouri Rivers. That area was the site of extensive flooding during the spring of 1973. By March of 1973 the waters were threatening plaintiffs' home. Plaintiff, Richard Presley, testified as to the location of the flood waters on various pertinent dates during that period. In addition, Defendant's Exhibit C represents a daily record of the water level in reference to plaintiffs' residence from March 10th to May 14th of 1973. The evidence shows that the flood waters first reached the threshold of the rear, or basement, level of plaintiffs' home on about March 12th or 13th, 1973. The water reached a depth of approximately two and one-half feet in the basement on March 17th, and then began to recede. It dropped just below the threshold of the basement door on March 23rd, but began to rise again shortly thereafter, reentering the basement on March 25th or 26th. A second crest occurred on April 5th, at which time the flood waters came within a few feet of the basement ceiling joists. The waters receded again, but remained at a depth of one to two feet in the basement during the mid part of April. The water rose a third time during the latter part of April and reached a final crest on April 28, 1973, when it stood approximately two and one-half feet deep in the upper floor of the house. The Presleys moved out on April 22, 1973, and did not return for several weeks thereafter.
The flood received extensive coverage by the newspapers, radio, and television throughout the months of March, April and May, 1973, and Richard Presley himself was the subject of a CBS radio interview while on a visit to St. Charles, Missouri, during the period of high water.
In his deposition Richard Presley stated that he first called an insurance agent, Myrl Hansen, to inquire about flood insurance "either during the first flood or immediately thereafter" (Dep. 23). At the trial he testified that he thought he contacted Hansen during the second period of rising water. The application for insurance, completed by Hansen, was dated March 27, 1973, when the water had already entered plaintiffs' residence for the second time. Presley testified that he did not remember the details of the conversation, but was sure that he told the agent at that time about the flood in progress. The application contained no space for disclosing either prior or current flood damages, and no reference was made therein to conditions existing on the date of application. Presley mailed a check to the insurance agent immediately, since the policy was not to take effect until two weeks after the company received the premium payment. The policy was issued April 11, 1973, and stated that it was to cover the period April 11, 1973, to April 11, 1974.
Presley testified that property damage during the first and second crests was "minimal" because he had taken everything upstairs when the flooding began. The third flood crest resulted in the loss of much of the Presleys' personal property, as well as damages to the frame structure of the house. Richard Presley computed damages to the residence at $10,116.20 and the loss of furniture at $4,931.78.
The Insurance policy in question states that it was issued pursuant to the National Flood Insurance Act of 1968 (Plffs' Exhibit 1). The policy further states that coverage extends to "all direct loss by flood" caused to the insured property during the effective date of the policy. There is no reference under the "perils excluded" provision of the policy to losses incurred as a result of flooding which had begun prior to the effective date of the policy.
Defendant initially denied payment of plaintiffs' claim by letter of May 21, 1973, in reliance upon the "loss clause" of the policy, which states:
"Payment of any loss under this policy shall not reduce the amount of insurance applicable to any other loss during the policy term which arises *1244 out of a separate occurrence of the peril insured against hereunder; provided, that all loss arising out of a continuous or protracted occurrence shall be deemed to constitute loss arising out of a single occurrence."
The position taken by the defendant in that letter was that the flood in this case was a "continuous or protracted occurrence" which began prior to the effective date of the policy, and which ostensibly would be exempted from coverage under the policy's "loss clause" (Plffs' Ex. 2).
The defense interposed by defendant at the trial was that when the policy became effective on April 11, 1973, the loss was no longer a "contingent" one since the flood was already in progress, and that recovery should, therefore, be denied on the ground of public policy.
The Court considers the "loss clause" of the insurance policy in question to be of no consequence to the determination of whether coverage extends to plaintiffs' loss in this case. The language of that clause merely provides that the company will only pay once for each occurrence, and that losses incurred during a continuous period of flooding shall be considered as a single loss for purposes of payment.
As a matter of public policy Missouri recognizes that a contract of insurance issued to cover a prior loss is generally invalid. In the case of MFA Mut. Ins. Co. v. Quinn, 259 S.W.2d 854, 860 (Mo.App.1953), the Court cited the position taken by the Texas courts, as follows:
"The general rule is that the property must be in existence when the risk attaches or the policy is void. Mallard v. Hardware Indemnity Ins. Co. of Minnesota, Tex.Civ.App., 216 S.W.2d 263, 266."
The Texas Supreme Court has set forth this position in greater detail in the more recent case of Burch v. Commonwealth County Mutual Ins. Co., 450 S.W.2d 838 (Tex.1970), wherein it was stated at pages 840-841:
"A person may not, with knowledge of a loss, transfer the risk from one company to another or make a contract by accepting a policy issued under such circumstances that he was under no obligation with respect thereto. See Mallard v. Hardware Indemnity Ins. Co., Tex.Civ.App., 216 S. W.2d 263 (no writ); Trinity Universal Ins. Co. v. Rogers, Tex.Civ.App., 215 S.W.2d 349 (no writ). If he applies for and obtains an antedated policy knowing that a loss has already occurred during the policy period, his failure to disclose the facts constitutes fraud that would enable the insurer to set aside the contract. See Annotation, 132 A.L.R. 1325. As suggested by the opinion in Alliance (Alliance Ins. Co. v. Continental Gin Co., Tex. Com.App., 285 S.W. 257), moreover, it is contrary to public policy for an insurance company, the business of which is affected with a public interest, knowingly to assume the burden of a loss that occurred prior to making the contract. This is the basis of the statements found in some opinions that an agent has no authority to issue a policy to cover a known loss. See Bankers Lloyds v. Montgomery, Tex.Com.App., 60 S.W.2d 201; United States Casualty Co. v. Rodriguez, Tex.Civ.App., 228 [288] S.W. 487 (wr. ref.)." (Emphasis added.)
Other courts have pointed out that this doctrine should be equally applicable where the loss insured against is in progress at the time insurance is purchased. In General Insurance Company of America v. Lapidus, 325 F.2d 287 (C.A. 9 1963), the Court at page 290 stated in part:
"We would agree that ordinarily one cannot insure a res that has already been destroyed. (Celina Mutual Casualty Co. v. Baldridge, 213 Ind. 198, 10 N.E.2d 904, 12 N.E.2d 258). *1245 Also, where some quick process of destruction is under way at the moment, even insurance innocently bought and issued should not cover. (Perhaps Thomas Roberts & Co. v. Calmar SS. Corp., D.C., 59 F.Supp. 203, is such a case.) For this there may be a number of reasons. Such transactions would be an open door to fraud. Further, we assume the law is not inclined to authorize bets on success of a fire department." (Emphasis added.)
In the instant case the plaintiffs' residence was in a continuous state of flood from March 25th or 26th until sometime in May or June of 1973. The Presleys were fully aware of their predicament both at the time they applied for insurance and on the effective date of the policy in question. Under these circumstances recovery must be denied.
This result is not inconsistent with the purposes behind the National Flood Insurance Act of 1968, 42 U.S.C. § 4001 et seq., under which plaintiffs' policy was issued. The National Flood Insurance Act provides federal reimbursement to participating companies in order to permit them to make flood insurance available at reasonable premium rates to persons residing in flood prone areas where insurance was previously unavailable or was available only at prohibitive rates. 42 U.S.C. § 4001. In establishing this flood insurance program Congress was hopeful that the plan would permit handling of flood losses to the greatest extent possible through the private insurance industry rather than through special federal disaster relief programs. 1968 U.S.Code Congressional and Administrative News, pp. 2965-2973. However, nothing in the Act nor the legislative history suggests that participating insurance companies must reimburse persons for losses which have already begun at the time they apply for insurance.
Accordingly, the Court hereby orders that judgment be rendered in favor of defendant.
This memorandum opinion is adopted by the Court as its findings of fact and conclusions of law, and the Clerk of the Court is directed to prepare and enter the appropriate order.