**David B. MILLER, Doris Miller, and Eastern Hardware and Supply, Inc., Plaintiffs,**

**v.**

**John W. MACY, Jr., Director of the Federal Emergency Management Agency, Defendant.**

**Civ. A. No. 79–482–MA.**

United States District Court, D. Massachusetts.

Aug. 17, 1981.

Gerard J. DuPont, DuPont & Murray, Attleboro, Mass., for plaintiffs.

Paul E. Troy, Asst. U. S. Atty., Boston, Mass., John Scheibel, Asst. Gen. Counsel, Fed. Emergency Management Agency, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This is an action under 42 U.S.C. § 4053 to review the denial of plaintiffs' claim for benefits under an insurance policy governed by the National Flood Insurance Act of 1968, as amended (Act), 42 U.S.C. §§ 4001 *et seq.*

Through the defendant, the Federal Government provides flood insurance for structures located in communities participating in the National Flood Insurance Program. Plaintiffs David B. Miller and Doris Miller are the sole shareholders of Eastern Hardware and Supply, Inc. Plaintiffs purchased two policies of flood insurance, one to cover the contents of their dwelling and one to cover the contents of their business, both of which are located at the same address. On February 6, 1978, during the so-called "Blizzard of 1978," there was a flood in Hull, Massachusetts, which inundated the insured property. Plaintiffs were paid the face amount of each of the policies by the defendant. Plaintiffs claim that the floodwaters reached a level of three feet in the basement, maintained that level for a few hours, and then increased to about six feet. Plaintiffs claim that this sequence of events constitutes two floods and that they are entitled to be paid for a second flood under the policies.

The defendant has moved for summary judgment asserting that, as a matter of law, when floodwaters reach a given level, do not subside but maintain that level for several hours, and then increase to a higher level causing additional damage, there is only a single, continuing flood within the meaning of the policies. The plaintiffs oppose defendant's motion, but do not claim that the facts are materially disputed. Accordingly, the matter is properly resolved by way of summary judgment. *See* Fed.R. Civ.P. 56(c); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976).

From January 7, 1978 to January 7, 1979, plaintiffs had flood insurance coverage under two different policies issued by the United States. Under policy No. 00308528 plaintiffs David and Doris Miller had $5,000 coverage on the contents of their hardware store, Eastern Hardware and Supply, Inc., located at 504–520 Nantasket Avenue, Hull, Massachusetts. Under policy No. 00309021 plaintiffs had $5,000 coverage on the contents of their dwelling, located at 520 Nantasket Avenue, Hull, Massachusetts.

Beginning on February 6, 1978, plaintiffs' premises were flooded to a depth of approximately three feet, causing damage in excess of $5,000 to contents owned by plaintiffs and damages in excess of $5,000 to contents of Eastern Hardware and Supply, Inc. Plaintiffs were paid the full face amount of the flood insurance policies by the United States. Plaintiffs, however,

claim that there were two floods on February 6 and 7, 1978, and that they should recover for twice the face amount of the policies. Plaintiffs contend that the "first" flood occurred at 10:00 p.m. on February 6, 1978, at which time floodwaters rose to a level of three feet in the basement. Plaintiff, David Miller, surmised in his deposition testimony that the water remained at the three-foot level for a length of time and then increased to about six feet. Plaintiff bases his belief that the water level remained at three feet for a period of time on a line left on the wall of his basement, apparently by soap suds and other powders. Based on plaintiff's account, the floodwaters did not recede:

Q: Are you saying that the three feet of water—

A: Came in first and then stopped.

Q: And then left?

A: No, stayed there. Didn't go out. Stayed there, and that was the way that that mark got onto my floors, because it coincided with what I saw. And then we were looking around, we wondered what the heck that mark was, then we found the boxes and everything else. We knew what it was. That water had stayed until the next high tide, and the next high tide that came in raised the level, but that white stuff already stuck to the wall.

Tr. at 19–20. *See also* Tr. at 52.

Thus, accepting plaintiff's version of events, his basement was inundated with three feet of water, the water leveled off for several hours, and then rose to a level of five or six feet. Although the floodwater never receded, plaintiffs claim that there were two separate and distinct floods. Their position is that the incremental rise in floodwater causing additional damage resulted in a new and distinct flood. It appears undisputed that the series of high tides which inundated plaintiffs' property were caused by the storm.

### Conclusions of Law

The insurance agreement which covers plaintiffs' property is the Standard Flood Insurance Policy issued pursuant to the Act. Under the terms of the contract, defendant agreed to insure plaintiffs against "direct loss by flood." Exhibits A and B, Standard Flood Insurance Policy, "Dwelling" and "General Property" forms. "Flood," in turn, is defined in the contract as:

A general and temporary condition of partial or complete inundation of normally dry land areas from:

1. The overflow of inland or tidal waters...

Subsection K of the "General Conditions and Provisions," entitled "Loss Clause," provides as follows:

Payment of any loss under this policy shall not reduce the amount of insurance applicable to any other loss during the policy term which arises out of a separate occurrence of the peril insured against hereunder; provided that all loss arising out of a continuous or protracted occurrence shall be deemed to constitute loss arising out of a single occurrence.

We believe that the above provisions are clear and unambiguous and, when applied to the facts of the instant case require us to grant defendant's motion for summary judgment. Based on the above cited language, a flood caused by unusually high tides associated with a storm begins with the inundation of normally dry land areas and lasts as long as the water remains. Once normally dry land areas are inundated, the flood constitutes an occurrence within the meaning of the Loss Clause that is ongoing and continuous at least until the water subsides and the land returns to its normally dry state. The insured is limited to recovery for one occurrence for all damage done during the length of that flood. The flood lasts at least until the water subsides.

This conclusion is consistent with the majority view, under which courts look to the underlying *cause* of the damage, rather than the loss sustained, in determining whether a single loss, occurrence, or accident or several distinct ones have occurred. *See Bartholomew v. Insurance Company of*

*North America*, 502 F.Supp. 246, 251 (D.R.I. 1980). While the plaintiff's theory, which focuses upon the losses sustained,[1] is certainly a plausible one, *see e. g., Anchor Casualty Co. v. McCaleb, et al.,* 178 F.2d 322, 324 (5th Cir. 1949) (reh. denied), it is neither the majority rule, nor has it been adopted in this Circuit. *See generally* Annotation, 55 A.L.R. 1300. Here the underlying cause of the high tides which flooded plaintiff's basement was the storm commonly referred to as the "Blizzard of 1978." This was undoubtedly a "continuous or protracted occurrence" within the meaning of the Loss Clause.

This result also appears consistent with cases construing policies issued pursuant to the Act. *See Drewett v. Aetna Casualty & Surety Co.,* 539 F.2d 496 (5th Cir. 1979); *Presley v. National Flood Insurers Association,* 399 F.Supp. 1242 (E.D.Mo.1975). Although the precise issue in *Drewett* and *Presley* was whether a flood was "in progress" at the time the insurance policies took effect, both cases support the general conclusion that a flood which reaches several crests over a relatively short period is a continuous occurrence, even when the floodwaters temporarily recede in the interim. *Presley,* 399 F.Supp. at 1245. Where, as here, the floodwaters did not recede between the first and second crests, the conclusion appears inescapable that there was but one continuous state of flood.

Having concluded that plaintiffs' losses resulted from a single, continuous occurrence within the meaning of the applicable policy provisions, the defendant is entitled to judgment as a matter of law.

SO ORDERED.

1. That plaintiffs' interpretation of the contract is based upon the so-called "loss theory" is apparent from Miller's deposition testimony:

Q: Okay. Is it your position that because there was three feet of water, and then another three or four feet came in in addition to that later on, that this was an entirely new flood?

A: Yes. In other words, the first three feet came in and knocked out what was ever up to three feet, but I had racks down there and those racks were filled with merchandise, and there was inventory all over the place. And *if that three-foot flood had stayed just three foot I would not have incurred the amount of loss that I did incur.* So, I'm not claiming a second portion of what was done the first time, because that was wrecked already. But, *what I say is that that second tide came in and gave me a second loss.*

\* \* \* \* \* \*

Q: If later on that day another foot of water came in and damaged some more goods that happened to be higher than the six foot line, would, in your opinion, that have been a third flood?

A: Yes.

Tr. at 20–21 (emphasis added).