**JOS. A. BANK CLOTHIERS, INC., and Vincent and Theresa Monteleone Individually and t/a Monteleone's Tailoring, Plaintiffs–Appellants,**

v.

**Saul and Charlotte BRODSKY, h/w and Winifred Frelich as Personal Representative of the Estate of Bennett Frelich, Defendants–Respondents.**

No. 71022.

Missouri Court of Appeals, Eastern District, Division Four.

Aug. 19, 1997.

Kortenhof & Ely, Jack Warner, St. Louis, for plaintiffs–appellants.

Brinker, Doyen & Kovacs, P.C., Jeffrey J. Brinker & Aaron I. Mandel, St. Louis, for defendants–respondents.

KAROHL, Judge.

This appeal involves a subrogation claim brought by Northbrook Insurance (Northbrook) in the name of its insured, Joseph A.

Bank Clothiers, Inc. (Bank) against the Brodsky's d/b/a B & F Enterprises (B & F), a Missouri partnership. B & F leased commercial property to Bank. On July 10, 1991, there was a flood which caused $1,217,582.69 damage to Bank's personal property. Northbrook covered most of the loss and sued B & F for negligence in failing to maintain an adequate sewer system at the leased premises, thus causing the flood. B & F moved for summary judgment on the basis that all or part of Bank's claim was not enforceable as a subrogation claim. The trial court granted summary judgment for defendants on Bank's subrogation claim. The court denied the motion for Bank's uninsured loss claim. The parties settled Bank's claim. Bank appealed the summary judgment on the claim made by Bank on behalf of Northbrook, a subrogation claim. The issues on appeal involve contractual interpretation of the lease contract and rights to subrogation. We affirm.

In August 1984, B & F Enterprises, a Missouri Partnership, owned LeChateau Village in Frontenac, Missouri. The partners included Saul Brodsky, Charlotte Brodsky, and Bennett Frelich. On August 6, 1984, B & F leased space in LeChateau Village to Bank. The final lease documents, which had been prepared by Bank, provided:

Section 11: *INSURANCE.*

(a) Tenant's *Insurance.* Tenant, at its sole expense, shall maintain and keep in effect throughout the Term a policy or policies of general public liability and fire and extended coverage insurance against loss or liability in connection with bodily injury or death or property damage or destruction in or upon the Premises, including all leasehold improvements to the Premises, in such amounts as generally carried by Tenant for Tenant's other stores. Such policies *shall name Landlord as an additional insured* and shall contain a clause that the insurer shall not cancel such policies without at least ten (10) days' prior written notice to Landlord, and shall be insured by insurers of recognized responsibility licensed to do business in Missouri. Prior to the Commencement Date, a certificate of such policies shall be delivered by Tenant to Landlord, and at least

thirty (30) days before any such policy shall expire, Tenant shall deliver a certificate of a replacement policy to Landlord.

Tenant may maintain any or all of the insurance required to be maintained by Tenant under a blanket policy or blanket policies covering the Premises and other property.

(b) *Landlord's Insurance.* Landlord shall maintain and carry throughout the Term insurance (with a minimum of at least eighty percent (80%) replacement cost) covering the entire Shopping Center against fire, vandalism and other perils such as are from time to time included in a standard extended coverage endorsement or an all-risk policy. Tenant hereby agrees from time to time to pay to Landlord as Additional Rent hereunder, upon demand, the amount, if any, by which Landlord's insurance premium shall be increased solely by reason of Tenant's particular use of the Premises other than as permitted herein.

(c) *Waiver of Subrogation.* Landlord and Tenant shall cause each insurance policy carried by them to be written in such a manner *so as to provide that the insurer waives all right of recovery by way of subrogation against Tenant or Landlord,* as the case may be, *in connection with any loss or damage to property actually paid for under such policy.* Neither party hereto shall be liable to the other for any loss or damage caused by fire or any of the casualties covered by all-risk insurance, to the extent of the releasing party's actual recovery under his insurance policy or policies. In the event either party shall fail to obtain such waiver of subrogation, or shall fail to supply the other party with evidence thereof, then such other party shall have the right to procure such waiver, if available, on behalf of, and at the sole cost and expense of, the party failing to obtain the waiver or to supply evidence thereof. If a waiver of subrogation is unavailable to either Landlord or Tenant, the other party shall not be obligated to obtain any waiver of subrogation. *This provision* shall not apply to loss or damage due to death or bodily injury, *but shall only apply to property damage.* (Emphasis Added)

From the commencement of the lease through July 1, 1989, Bank obtained property insurance required under Section 11(a) of the lease, first with Transportation Insurance Company, and then, with Arkwright–Boston Insurance. B & F was an insured as required by the lease agreement on both of those policies. In 1989, Bank purchased new insurance with Northbrook Insurance, but failed to list B & F as an insured.

On or about July 10, 1991, the storm sewer system that serviced Le Chateau Village backed up during a rainstorm. Bank alleged that as a result of the sewer problem, several feet of water accumulated in its store, causing extensive property damage. Northbrook, Bank's insurance carrier at the time of the loss, paid Bank on its claim. Bank filed a petition against B & F alleging a flood occurred at Le Chateau Village on or about July 10, 1991. Bank further alleged the flooding was caused due to the carelessness, negligence, gross negligence, and recklessness of B & F, consisting of, but not limited to, the failure of B & F to design, build, and install a larger sewer system for the property. Bank asked for both actual and punitive damages for losses in the amount of $1,217,-582.69.

B & F filed a motion for summary judgment. It alleged part or all of Bank's petition was a subrogation claim of its insurance carrier, Northbrook Insurance. Bank did not file an evidentiary response to B & F's motion for summary judgment, but did file a memorandum in opposition. On September 11, 1995, the court sustained B & F's motion for summary judgment on the subrogation claim for Bank's damages covered and paid by Northbrook. It denied the motion on damages not covered by insurance. We review the Bank appeal from the adverse judgment on the subrogation claim.

■■■ Summary judgment may be entered when a movant demonstrates, through the pleadings, depositions, answer to interrogatories, and admissions on file, together with any affidavits, that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law. Rule 74.04. Our standard of review of summary judgment is "essentially *de novo.*" *ITT*

*Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). "The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment." *Id.* When reviewing an appeal of summary judgment, "the court will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* We accord the nonmovant the benefit of all reasonable inferences. *Id.* The review of a grant of summary judgment is equivalent to reviewing a court-tried proceeding; if the judgment is sustainable under any theory, it must be sustained. *Chancellor Development Company v. Brand,* 896 S.W.2d 672, 675 (Mo.App. E.D.1995). A summary judgment movant who is the "defending party" need not controvert each element of a non-movant's cause of action to establish a right to summary judgment. *Id.* at 674. The "defending party" may establish a right to summary judgment by showing: (1) facts that negate *any one* of the claimant's element facts; (2) that non-movant does not have sufficient evidence to support a finding of the existence of *any one* of the claimant's elements; or (3) no genuine dispute exists as to *each* of the facts necessary to support the movant's properly-pleaded affirmative defense. *Id.* at 675.

We first consider B & F's request that the appeal be dismissed for Bank's failure to comply with the requirements of Rule 84.04 of the Missouri Rules of Civil Procedure. B & F argues Bank's statement of facts section: (1) does not provide a fair and concise statement of the facts relevant to the questions presented for determination; and (2) asserts facts not presented to the trial court. B & F also alleges Bank's points relied on fails to properly set forth wherein and why the trial court erred, but instead, sets forth abstract statements of law.

■■■ Rule 84.04(c) requires a fair and concise statement of the facts relevant to the

questions presented for determination, without argument. The primary purpose of the statement of facts section is to afford an immediate, accurate, complete and unbiased understanding of the facts of the case. *Amparan v. Martinez*, 862 S.W.2d 497, 498 (Mo. App. E.D.1993). We have been hesitant in the past to dismiss an appeal because the appellant's statement of facts was inadequate, despite holding the authority to do so. *Thompson v. Thompson*, 786 S.W.2d 891, 892 (Mo.App.1990). We do not expect perfection; however, we do expect reasonable compliance with the briefing rules. *State ex rel. Missouri Highway and Transportation Commission v. Pipkin*, 818 S.W.2d 688, 690 (Mo. App.1991).

B & F argues for dismissal because Bank "fails to set forth *any* of the relevant provisions of the lease at issue." (Emphasis taken). Bank provided this court with a copy of the entire lease as an appendix to its brief and cited to the appendix in its statement of facts. However, documents which are not found in the legal file are not part of the record, and therefore cannot be relied on by appellant. *Strycharz v. Barlow*, 904 S.W.2d 419, 426 (Mo.App. E.D.1995). Only sections 1, 2, 10, and 11 of the lease were before the trial court. We will ignore Bank's arguments based on sections of the lease that were not before the trial court when it decided the motion for summary judgment. We will review the validity of granting summary judgment on the trial court record.

B & F also argues that Bank failed to properly set forth the points relied on in its brief. Rule 84.04(d) requires points relied on to state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous. The Rule 84.04(d) briefing requirements have been explained as follows: a concise statement of the challenged ruling of the trial court; the rule of law the court should have applied; and the evidentiary basis upon which the asserted rule is applicable. *DeCota v. J.E.M. Development Corporation*, 908 S.W.2d 884, 887 (Mo.App. S.D.1995). Points which do not state what ruling of the trial court is challenged but instead set out abstract statements of law, without showing how they are related to any action or ruling of the court, are not compliance with his Rule and preserve nothing for appeal. *Id.* The requirements of Rule 84.04(d) are therefore mandatory. *Missouri Highway and Transportation Commission v. Taylor*, 839 S.W.2d 676, 679 (Mo.App. S.D.1992).

Bank's points relied on are:

**Point No. 1:** The trial court erred as a matter of law in granting partial summary judgment to Respondents because Bank's promise to name Respondents as additional insured's in its insurance policy with Northbrook is *not* a defense to Northbrook's subrogation claims.

**Point No. 2:** The trial court erred as a matter of law in granting partial summary judgment to Respondents because the "Tenant's Insurance" lease provision is an invalid exculpatory clause under Missouri law. Even if this Court believes the exculpatory clause is valid, it does not exculpate the Respondents for grossly negligent or reckless conduct.

**Point No. 3:** The trial court erred as a matter of law in granting partial summary judgment to Respondents because the Tenant's Insurance clause (requiring Appellant to name Respondents as insureds in their public liability insurance policy) does *not* exculpate Respondent from liability for their negligence.

**Point No. 4:** The trial court erred as a matter of law in granting partial summary judgment to Respondents because Respondents are *not* implied co-insureds under Bank's insurance policy with Northbrook.

**Point No. 5:** The trial court erred as a matter of law in granting partial summary judgment to Respondents because Respondents do not have an insurable interest in the property covered under the Northbrook policy.

Bank's points relied on are far from a perfect example of compliance with the "wherein and why" requirements of Rule 84.04(d), but they argue only matters of law. We hesitate to dismiss this appeal for this rule violation since we recognize that the

rules of civil procedure are to be liberally construed to promote justice and to minimize the number of cases disposed of on procedural questions. *Commerce Bank of Kansas City v. Conrad,* 560 S.W.2d 388, 391 (Mo. App.1977). We may rule on the merits of the appeal where the issues and questions are clear and can be found somewhere else in the appellant's brief, *State ex rel. Director of Revenue v. White,* 796 S.W.2d 629, 630 (Mo. banc 1990), providing there is a basis for finding Respondent correctly understood the disputed questions of law. In *Martin v. Buzan,* 857 S.W.2d 366, 368 (Mo.App. E.D. 1993), we reached the merits because the issue was clear. The two legal issues are not complicated and B & F has shown through its brief that it was aware of them. The motion to dismiss appeal is denied.

 Bank argues five points. They depend on whether: (1) Northbrook has a right of subrogation; and (2) the subrogation claim is not barred by the provisions of the lease. Subrogation is a right by which the equity of one person is worked out through the legal rights of another. The right of subrogation accrues to a person who has paid the debt or obligation for which another is primarily responsible. *American Nursing Resources, Inc. v. Forrest T. Jones & Co., Inc.,* 812 S.W.2d 790, 794 (Mo.App.1991). In subrogation, a third party is substituted into the place of the creditor, so that the party who will benefit from the subrogation succeeds the creditor's right to the debt in question. *Id.* Subrogation should be applied where justice, based on the dictates of equity and good conscience, demands its application, and where the rights of the one asking subrogation are more equitable in nature than those who oppose the subrogation. *In re Jamison's Estate,* 202 S.W.2d 879, 883–84 (Mo.1947). The subrogee's claim is taken from a derivative right that provides no greater rights in law or equity to the subrogee than the subrogor had, therefore, the subrogee cannot make a claim its subrogor could not make. *Stoverink v. Morgan,* 660 S.W.2d 743, 745 (Mo.App.1983). Therefore, any defense available against the subrogor, Bank, is available against the subrogee, Northbrook. *Id.* Subrogation also cannot exist where its occurrence would be inconsis-

tent with the terms of the contract. *Anison v. Rice,* 282 S.W.2d 497, 504 (Mo.1955).

The lease contains Bank's agreement to obtain tenant insurance and name B & F as an additional insured on the policy. Bank complied with this agreement until it changed insurance companies to Northbrook. B & F is not listed as an additional insured on the Bank's Northbrook policy. Bank successfully filed a claim with Northbrook to recover its losses after the July 1991 flooding. This suit was initiated to recover Bank's insured damages for Northbrook and the uninsured damages for Bank. This appeal involves only the insured subrogation claims.

 Bank cannot recover from B & F, because the "no subrogation" rule applies. Where an insurance company attempts to recover, as a subrogee, from a coinsured under the policy, whose negligent act occasioned the loss, the claim must fail in the absence of design or fraud on the part of the coinsured. *Sherwood Medical v. B.P.S. Guard Services, Inc.,* 882 S.W.2d 160, 162 (Mo.App.E.D.1994). The lease provisions for co-insurance bind Bank. Northbrook, as Bank's subrogee, is also bound by a coinsured relationship of Bank and B & F.

In *Rock Springs Realty, Inc. v. Waid,* 392 S.W.2d 270 (Mo.1965), lessor sued lessee on a subrogation claim for damages sustained as a result of a fire caused by lessee's negligence. The lease agreement contained no express agreement that lessor was to maintain insurance for both parties. There was a clause providing that lessee would surrender possession of the leased premises to lessor in good condition "loss by fire, casualty, Providence and deterioration excepted." *Id.* at 271. Our Missouri Supreme Court viewed this surrender clause as an exculpatory provision relieving the lessee from liability for its own negligence in causing a fire. The court held defendant, the lessee, should be treated as a "co-insured." Thus, as a "coinsured" it was not liable on a subrogation claim. The court found the agreement contemplates a potentially negligent occupant. A right of subrogation would be a windfall to the insurer. *Id.* at 278. If an insurer is permitted subrogation recovery from a party

who is, by contract, supposed to be a co-insured but is not, because of the insured's breach of contract, a windfall for the insurer would indeed occur.

■ In *Rock Springs*, the tenant was determined by the court to be "co-insured" under the insurance policy obtained by the lessor where it was clear that the parties intended to look only to insurance, rather than each other, to pay damages caused by negligence. The court found the parties' intent from a surrender clause of the lease. In the present case, no such reach is necessary. The express provisions of the lease agreement that were before the trial court support a finding both parties agreed to look to insurance for tenant's property damage. Lease Sections 11(a) and (b) require Bank to carry insurance in the names of both parties. Section 11(c) provides there is to be no right of subrogation between the parties. It is clear the parties intended to look only to insurance, rather than each other, to pay any property damages. The only construction which will give meaning to these sections in the lease is that the insurance agreement was made to protect both parties.

Other states have agreed with the decision in *Rock Springs*. *Sutton v. Jondahl,* 532 P.2d 478 (Okl.Ct.App., 1975); *Alaska Insurance Company v. RCA Alaska Communications, Inc.,* 623 P.2d 1216 (Alaska, 1981); *Community Credit Union of New Rockford v. Homelvig,* 487 N.W.2d 602 (N.D.1992) (owner who failed to comply with agreement to insure contractor barred from recovery on subrogation claim against contractor); *Housing Investment Corporation v. Carris,* 389 So.2d 689 (Fla.Dist.Ct.App.1980); *South Tippecanoe School Building Corporation v. Shambaugh and Son, Inc.,* 182 Ind.App. 350, 395 N.E.2d 320 (1979); *Monical v. State Farm Insurance Company,* 211 Ill.App.3d 215, 155 Ill.Dec. 619, 569 N.E.2d 1230 (1991); *Reich v. Tharp,* 167 Ill.App.3d 496, 118 Ill. Dec. 248, 521 N.E.2d 530 (1987) (buyer of real estate not allowed to recover damages from a seller who remained in possession and was negligent, since the buyer was deemed obligated to make the seller a co-insured but failed to do so).

■ No right of subrogation can arise in favor of an insurer against its own insured, since, by definition, subrogation arises only with respect to rights of the insured against third persons to whom the insurer owes no duty. No right of subrogation arises against a person who holds the status of an additional insured. *Reich* 118 Ill.Dec. at 252, 521 N.E.2d at 534. Where a party is required by contract to carry insurance for the benefit of another, that party will be treated as a coinsured. *Id.* at 252, 521 N.E.2d at 534. To allow an insurer to sue for recovery against one of its own insured would violate the basic principles of subrogation and equity, as well as violate sound public policy. *Alaska Insurance Company,* 623 P.2d at 1217–18. It is understood that the parties agreed to look only to insurers in the event of a loss, and not to seek recovery from the other party. *Monical,* 155 Ill.Dec. at 624, 569 N.E.2d at 1235. When the carrying of insurance is required among parties, the agreement must be viewed as mutually exculpating the parties from potential suits by their co-insured related to risks covered in the policy. The parties may pursue claims against their co-insured for risks not covered under the policy and damages caused by intentional acts, but not for negligent acts or omissions.

Contract law also defeats Bank's cause of action. The subrogee stands in the place of the subrogor. Here, Bank agreed to acquire property insurance and name B & F as additional insured. Bank's breach of that agreement offers B & F a cause of action for breach of contract damages against Bank for any damages Northbrook may obtain against B & F. Thus, Bank's breach forecloses its claim against B & F and Northbrook's claim as Bank's subrogee.

We cannot address some of Bank's arguments. The terms of the contract must be read as a whole to arrive at the intention of the parties. *Village of Cairo v. Bodine Contracting Co.,* 685 S.W.2d 253, 264 (Mo.App. 1985). But, B & F did not submit the entire lease to the trial court. Bank attached a copy of the complete lease as an appendix to its brief. Bank argues: (1) the trial court erred because it failed to consider the entire lease; and (2) other sections of the lease

would show that the contractual construction supported by B & F and found by the trial court would in fact render other lease provisions as meaningless.

In defense of B & F's motion for summary judgment, Bank could have, but did not, present the entire lease in evidentiary form. The summary judgment facts that included only part of the lease provisions were uncontested. An issue that was not expressly presented or decided on by a trial court is not preserved for us to review. *Zundel v. Bommarito,* 778 S.W.2d 954, 956 (Mo.App.1989). The four sections which were before the trial court were sufficient to support summary judgment. Exhibits that were not offered to the trial court are not part of the record for appeal. *Sydnor v. Director of Revenue,* 876 S.W.2d 627, 629 (Mo.App.W.D.1994). Issues and questions not properly presented in the points relied on will be considered abandoned. *Greene County Concerned Citizens v. Board of Zoning Adjustment of Greene County,* 873 S.W.2d 246, 255 (Mo.App.S.D.1994). Further, some of Bank's arguments were presented for the first time in Bank's reply brief. "Assignments of error set forth for the first time in the reply brief do not present issues for appellate review." *Application of Gilbert,* 563 S.W.2d 768, 771(Mo. banc.1978). There was nothing to prevent Bank from offering the entire lease in evidentiary form to the trial court. These arguments are, therefore, rejected.

*Chancellor Development Company v. Brand,* infra, held summary judgment may be affirmed if sustainable under any theory. For that reason, we need not address each of Bank's points relied on. Our Supreme Court, citing *Kansas City Stock Yards Co. v. A. Reich and Sons, Inc.,* 250 S.W.2d 692 (Mo.1952), held that a rental agreement between a lessor and lessee providing the parties would look solely to insurance in case of fire, negligent or otherwise, was valid and not against public policy. *Rock Springs Realty Inc.,* 392 S.W.2d at 277. The court cited *Kansas City Stock Yards Co.* and held any possible contractual interference with the rights of an insured to subrogation would not constitute any legal impediment to the agree-ment, nor could policy provisions for subrogation rights interfere with the right of the lessor and lessee to so contract. *Rock Springs Realty, Inc.* 392 S.W.2d at 277.

We affirm.

RHODES RUSSELL, P.J., and SIMON, J., concur.